IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE J. V., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-6216 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| LELAND DUDEK, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose J. V. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for SSI on October 23, 2020, alleging disability since January 1, 2014 due to congestive heart failure, depression, diabetes, gout, high blood pressure, high cholesterol, and memory problems. Administrative Record ("R.") 166, 192. Born in January 1975, plaintiff was 45 years old as of the application date, making him a younger person (under age 50). 20 C.F.R. §

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

416.963(c); R. 166. He obtained a GED and worked from 2005 to 2014 loading trucks for a food distribution company. R. 39, 193. Plaintiff was born with a heart condition and in January 2014 he stopped working after experiencing congestive heart failure. R. 192, 344-45. He ultimately received an ICD (implantable cardioverter-defibrillator). R. 339, 405.

The Social Security Administration denied plaintiff's applications initially on April 13, 2021, and upon reconsideration on August 27, 2021. R. 58-85, 99-102. Plaintiff filed a timely request for a hearing and on January 10, 2022, he appeared before an administrative law judge ("ALJ"). R. 33. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Lisa Gagliano (the "VE").[2] R. 35-57. On May 27, 2022, the ALJ found that plaintiff's congestive heart failure, hypertension, depression, and obesity are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16-18.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work with several postural, environmental, and non-exertional limitations. R. 18-23. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past work as a material handler, but could perform a significant number of other jobs available in the national economy. R. 24-25. As a result, the ALJ

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

concluded that plaintiff was not disabled at any time from the October 23, 2020 application date through the date of the decision. R. 25. On October 3, 2022, the Appeals Council denied plaintiff's request for review. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ: (1) made a flawed mental RFC assessment; (2) erred in finding him capable of light work; and (3) improperly discounted his subjective statements regarding his limitations.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A.     Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing whether: "(1) the claimant is presently employed; (2) the

---

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

claimant has a severe impairment or a combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021); *see also Melvin J. v. Kijakazi*, No. 20 C 3284, 2022 WL 2952819, at *2 (N.D. Ill. July 26, 2022) (citing 20 C.F.R. § 416.920(a)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Butler*, 4 F.4th at 501.

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand

4

terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.  Analysis**

    **1.  Mental RFC**

Plaintiff argues that the case must be reversed or remanded because the RFC does not adequately account for his mental limitations. Dkt. 15 at 8-12. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ determined that despite plaintiff's moderate limitations in concentration, persistence, or pace ("CPP") and in adapting and managing himself, he can: understand, remember, and carry out short, simple work instructions; and sustain concentration to perform simple, routine tasks in a low pressure and low stress work environment, defined as one requiring only simple, work-related decision making, occasional changes in the work setting, and no work at a production rate pace such as assembly line work or other work requiring rigid quotas. R. 18. The ALJ further limited plaintiff to performing job duties that do not

5

involve tandem tasks, teamwork, or more than incidental contact with the public. R. 18-19.

Plaintiff argues that this RFC is deficient because the ALJ did not adequately explain why he found only moderate as opposed to marked or severe limitations at Step 3 of the analysis. Dkt. 15 at 8-9. But plaintiff ignores that state agency reviewers Leon Jackson, Ph.D., and Melanie Nichols, Ph.D., both agreed that plaintiff suffers from moderate limitations in CPP and in adapting and managing himself, R. 64, 81, which is exactly what the ALJ found. R. 17-18. *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *15 (N.D. Ill. Dec. 19, 2019) ("The opinion of a non-examining state agency consultant is the type of medical evidence an ALJ may rely upon to craft a claimant's R[F]C"). Plaintiff does not cite any contrary opinion or point to evidence that purportedly evidences severe mental dysfunction.

Instead, plaintiff states in conclusory fashion that the state agency psychological physicians "all provided considerable support for a finding that [his] combined impairments would result in an inability to sustain the on-task requirements of full-time work." Dkt. 15 at 10. The record does not bear this out. On March 11, 2021, consultative examiner Jenny Marie Wamsat, Psy.D., documented dysphoric mood and affect, somewhat circumstantial speech, normal thought process, full orientation, good memory, and good judgment. R. 385-86. Drs. Jackson and Nichols both considered Dr. Wamsat's evaluation and determined that plaintiff's moderate mental limitations are adequately addressed with low stress,

6

simple, and routine vocational activities. R. 64, 72-73, 81, 84. The ALJ found these opinions partially persuasive and imposed even greater functional restrictions related to decision-making, social interaction, production rates, and workplace changes. R. 23. Plaintiff does not identify any physician who found him more limited in his ability to focus or suggested he needed an accommodation for off-task time.

Also unavailing is plaintiff's objection that the ALJ provided no valid basis for omitting the consultants' additional restriction to one- to two-step tasks. Dkt. 15 at 11. The ALJ fairly explained that such a limitation was inconsistent with plaintiff's ability to repeat multiple digits forwards and backwards, subtract serial sevens, and do simple calculations. R. 23. Plaintiff may disagree with this assessment but the Court will not reweigh evidence or substitute its judgment for the ALJ's determination. *Warnell*, 97 F.4th at 1052-53. The ALJ likewise did not commit reversible error by failing to specifically mention Dr. Wamsat's observation that plaintiff's "psychiatric symptoms and medical conditions appear to be significantly impacting his daily functioning." R. 386; Dkt. 15 at 11. It is well-established that an ALJ "need not address every piece or category of evidence identified by a claimant," and the ALJ in this case clearly considered Dr. Wamsat's opinion in rendering his decision. R. 22. *Erik W. v. Dudek*, No. 24 C 4865, 2025 WL 832809, at *2 (N.D. Ill. Mar. 17, 2025) (quoting *Warnell*, 97 F.4th at 1053).

Plaintiff argues that the RFC is still flawed because the limitation to simple, routine work is insufficient to account for his moderate limitations in CPP. Dkt. 15

7

at 11-12; Dkt. 20 at 1-2 (citing *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019)). This argument fails because Drs. Jackson and Nichols translated plaintiff's moderate limits in CPP to an RFC for simple, low stress, and routine tasks, R. 64, 72-73, 81, 84, and the ALJ reasonably relied on that translation. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021); *Youmans v. Colvin*, No. 14 C 7609, 2016 WL 3595729, at *6 (N.D. Ill. July 5, 2016) (citing *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)) ("where a consulting physician translates a finding of moderate limitations in concentration, persistence, or pace into an RFC for simple, routine work, the ALJ may rely on that opinion in assigning the RFC").

Plaintiff's remaining arguments fare no better. Contrary to plaintiff's suggestion, the ALJ expressly considered the combined effect of all his impairments, including depression, congestive heart failure, hypertension, and obesity at multiple steps of the evaluation. R. 16, 20-22. The ALJ also reasonably discounted plaintiff's complaints of disabling mental limitations given that he never received any psychological counseling yet still routinely presented with normal mood, orientation, cognition, attitude, memory, appearance, and behavior. R. 17, 20, 22, 23 (citing R. 341, 348, 430, 435, 439, 447, 854). Indeed, plaintiff's sole treatment was a prescription for Cymbalta which he obtained from his primary care physician. R. 384. *See Edward H. v. Kijakazi*, No. 20 C 3847, 2023 WL 2683171, at *10 (N.D. Ill. Mar. 29, 2023) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)) ("As a general matter, an ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility"). *Cf. Gerstner v.*

*Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (ALJ erred in "selectively discuss[ing] portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability").

Viewing the record as a whole, the ALJ did not commit reversible error in determining plaintiff's mental RFC, and his request to remand the case for further consideration of this issue is denied.

### 2. Physical RFC

Plaintiff next argues that the ALJ erred in finding him capable of a reduced range of light work. Dkt. 15 at 12-14. He begins by claiming that the ALJ failed to mention several of his hospitalizations for congestive heart failure "throughout the relevant period" and painted an "overly rosy picture" of his functioning. Dkt. 15 at 12-13; Dkt. 20 at 2. Plaintiff is mistaken. The ALJ expressly acknowledged plaintiff's multiple hospitalizations between 2014 and 2019, but also observed that after plaintiff filed his application for SSI benefits in October 2020, he was hospitalized only one time in January 2021 due to COVID-19. R. 20. *See Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997) ("[O]ne can collect SSI under Title XI only as of the date of application"); 20 C.F.R. § 416.335. The rest of plaintiff's treatment consisted of routine follow-up appointments that revealed generally unremarkable findings. R. 22. In November 2020, for example, plaintiff's cardiologist noted that he was "doing much better clinically" and a physical exam that day was largely normal. R. 338, 341. Exams in February, May, July, and November 2021 were also essentially normal and showed that plaintiff's heart

9

device was "working well" and he had experienced "no significant arrhythmias." R. 429-30, 435, 439, 972.

Plaintiff ignores this evidence and fails to explain how it demonstrates that he is incapable of performing light work as set forth in the RFC. Rather, plaintiff argues that the ALJ did not properly consider his obesity. Dkt. 15 at 13-14. But the ALJ not only found that plaintiff's obesity is a severe impairment, but also considered it repeatedly throughout the decision. R. 16, 17, 21, 22. Plaintiff claims that the ALJ "misleadingly" stated that his BMI "exceeded 30.00" when it actually ranged from 34.03 to 40.58. *Id.* (citing R. 301, 341, 372, 398, 403, 407). Of course, the cited range unquestionably "exceeded 30.00" and plaintiff cites no authority suggesting that an ALJ must recite specific BMIs. Plaintiff also contends that his size "could have made an impression" had the ALJ seen him in person as opposed to by video, *Id.* at 14, but speculation is not evidence. *See Stewart v. Berryhill*, 731 F. Appx. 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence") (internal quotations omitted); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs").

Significantly, plaintiff does not identify a physician of record who imposed any functional restrictions related to his obesity. *See Lynida W. v. Saul*, No. 19 C 2021, 2020 WL 2542156, at *4 (N.D. Ill. May 19, 2020) (quoting *Shumaker v Colvin*, 632 F. Appx. 861, 867 (7th Cir. 2015)) (ALJ properly considered the plaintiff's

10

obesity where the plaintiff "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ"). In fact, no physician found plaintiff more limited than the ALJ. R. 67-69, 82 (setting forth state agency reviewers' opinions that plaintiff is capable of a full range of light work with no additional restrictions). As the Seventh Circuit has stated, "[t]he lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

There is similarly no merit to plaintiff's objection that the ALJ committed reversible error by omitting use of a cane or walker from the RFC. Dkt. 15 at 14. An assistive device only needs to be incorporated into an RFC if it is a medical necessity. *Lohn Eric E. v. Saul*, No. 20 C 2303, 2021 WL 722828, at *2 (N.D. Ill. Feb. 24, 2021). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." *Jacqueline V. v. O'Malley*, No. 20 C 6272, 2024 WL 1363710, at *5 (N.D. Ill. Mar. 29, 2024). Here, plaintiff cites no medical evidence indicating that he needs a cane or walker, and the consultative examiner documented normal gait in March 2021. R. 390.

11

Viewing the record as a whole, the ALJ did not commit any reversible errors in determining that plaintiff has an RFC for a reduced range of light work. The ALJ's decision is supported by substantial evidence and does not provide a basis for remand. *See Salvador H. v. Kijakazi*, No. 22 C 7254, 2023 WL 5017944, at *5 (N.D. Ill. Aug. 7, 2023) (citing *Biestek*, 587 U.S at 103) ("The 'substantial evidence' standard is not a high hurdle to negotiate").

### 3. Subjective Symptom Evaluation

Plaintiff finally argues that the case must be reversed or remanded because the ALJ erred in finding that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not fully supported. Dkt. 15 at 14-15. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not

12

overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support"). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff argues that the ALJ improperly discounted his statements based on his receipt of conservative treatment. Dkt. 15 at 15. As noted, however, it is entirely appropriate for an ALJ to consider the conservative nature of a claimant's care in assessing credibility. *Edward H.*, 2023 WL 2683171, at *10. Plaintiff does not dispute that as of October 2020, his treatment generally consisted of routine follow-up appointments and medication management. R. 22. Also unavailing is plaintiff's assertion that the ALJ erred by failing to inquire about his reasons for not pursuing additional care. Dkt. 15 at 15. There is no indication in the record that plaintiff was unable to afford treatment, could not get appointments, experienced intolerable medication side effects, or had any other explanation for not seeking further treatment. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (affirming credibility determination where the plaintiff did not "identif[y] any specific reason that she did not seek more treatment").

All that remains is plaintiff's suggestion that the ALJ should have obtained opinions from his treating physicians concerning his functioning. Dkt. 15 at 15; Dkt. 20 at 3. Yet "an ALJ is generally under no 'affirmative duty' to contact a claimant's

13

physician to obtain a medical opinion." *Joseph M.*, 2019 WL 6918281, at *15; *see also Weaver v. Berryhill*, 746 F. Appx. 574, 578-79 (7th Cir. 2018) ("It was [plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work"). This is particularly true where, as here, the evidence before the ALJ was sufficient to make a finding as to plaintiff's disability. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("This court generally upholds the reasoned judgment of the Commissioner on how much evidence to gather"). Notably, plaintiff chose not to secure his own treating opinions even though he "was represented by counsel at the hearing [and] is presumed to have made h[is] best case before the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

Viewing the record as a whole, the ALJ's assessment of plaintiff's subjective statements was not "patently wrong." *Grotts*, 27 F.4th at 1279; *see also Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *5 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. Appx. 951, 961 (7th Cir. 2013)) (an ALJ's credibility assessment "need not be perfect; it just can't be patently wrong"). Plaintiff's request to remand the case for further consideration of this issue is denied.

## **CONCLUSION**

For the reasons stated above, plaintiff's motion for summary judgment [15] is denied, and the Commissioner's motion for summary judgment [18] is

granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng
United States Magistrate Judge**

Date: 3/21/2025